Joan C. BURNHAM, etc.,
Plaintiff, Appellant,

v.

The GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA,
Defendant, Appellee.

No. 88–2115.

United States Court of Appeals,
First Circuit.

Heard April 7, 1989.

Decided May 3, 1989.

---

Mary P. Harrington with whom Ronan, Strome, Segal & Harrington, Salem, Mass., was on brief for plaintiff, appellant.

David O. Brink with whom Gallagher & Gallagher, P.C., Boston, Mass., was on brief for defendant, appellee.

Before BOWNES and SELYA, Circuit Judges, and CAFFREY,* Senior District Judge.

SELYA, Circuit Judge.

This is a hard case—hard not in the sense that it is legally difficult or tough to crack, but in the sense that it requires us, like the court below, to deny relief to a plaintiff for whom we have considerable sympathy. We do what we must, for "it is the duty of all courts of justice to take care, for the general good of the community, that hard cases do not make bad law." *United States v. Clark*, 96 U.S. 37, 49, 24 L.Ed. 696 (1877) (Harlan, J., dissenting) (quoting Lord Campbell in *East Indian Co. v. Paul*, 7 Moo. P.C.C. 111).

I

Plaintiff-appellant Joan C. Burnham is the duly appointed administratrix of the estate of her late husband, Gordon C. Burnham, Jr. (Burnham). The decedent was a long-time employee of Caribou Fisheries, Inc. (Caribou), a national distributor of frozen fish and other food products. By October of 1979,[1] he had become Caribou's Operations Manager. On the twentieth of that month, Burnham was hospitalized to receive radiation therapy for a malignant cancer. On November 8, he was discharged to his home, where he remained for roughly three weeks. On November 29, he was admitted to another hospital. He died there in early December.

On November 1, defendant-appellee Guardian Life Insurance Company (Guardian) added Caribou as an additional insured

---

* Of the District of Massachusetts, sitting by designation.

1. All references to dates are to the calendar year 1979 unless otherwise indicated.

under a group life insurance policy (Policy), effective that date. The Policy covered eligible Caribou employees as of November 1. The parties agree that, had Burnham been working in Caribou's office full time on November 1, he would have been covered. But, he was then hospitalized, and the Policy's coverage embraced only "full-time Employee[s]," defining the phrase as follows:

A full-time Employee means an Employee who regularly works at least the number of hours in the normal work week established by his Participating Employer, but in no event shall an Employee be considered a full-time Employee unless he regularly works at least 30 hours per week performing the duties of his occupation at his Participating Employer's business establishment or other location to which his Participating Employer's business requires him to travel.

The Policy also stipulated that:

In any instance when an Employee is not actively at work on full-time on the date he would become insured in accordance with the above provisions, the commencement of the Employee's insurance shall be deferred until return to active work on full-time.

Following Burnham's demise, plaintiff claimed the death benefit. She acknowledged that the decedent had never returned to his office after October 19, but contended that, throughout his first hospitalization (October 20–November 8) and the ensuing period of home confinement (November 8–28), Burnham performed substantially all of his ordinary Caribou duties. Notwithstanding this claim,[2] Guardian refused to pay, citing the full-time employment provision.

Plaintiff sued Guardian in state court and, when she amended her complaint to assert a cause of action pursuant to the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* (1982), Guardian removed the case to federal district court. The district court eventually granted defendant's motion for summary judgment. *Burnham v. Guardian Life Ins. Co.*, No. 88–0044–Mc, 1988 WL 105627 (D.Mass. Oct. 5, 1988) (D.Ct.Op.). Plaintiff appeals.

## II

The order which triggered this proceeding was entered under Fed.R.Civ.P. 56. We have often rehearsed the criteria which govern application of Rule 56, *see, e.g., Mack v. Great Atlantic & Pacific Tea Co.*, 871 F.2d 179, 181–182 (1st Cir.1989); *United States Fire Ins. Co. v. Producciones Padosa, Inc.*, 835 F.2d 950, 953 (1st Cir. 1987), and eschew reenactment of the scenario today. Suffice it to say that, in order to sustain the judgment below, we must, after perusing the record and all reasonable inference extractable therefrom in the aspect most generous to appellant, be "fully satisfied that there is no genuine dispute as to any relevant fact issue and that the appellee is, as a matter of law, due the relief which the district court awarded." *Advance Financial Corp. v. Isla Rica Sales, Inc.*, 747 F.2d 21, 26 (1st Cir.1984).

Although many subsidiary facts are controverted on this record—it is, for example, hotly debated whether Burnham carried a full workload after October 19, *see supra* note 2—the controlling facts seem undisputed: the Policy comes within the purview of ERISA; its effective date and relevant provisions are as stated above; and whatever corporate duties decedent fulfilled after the effective date were performed exclusively in hospital or at his home. Thus, the only authentic controversy presented on appeal concerns the parties' divergent interpretations of these established facts. Put another way, if the district court correctly construed the Policy, *brevis* disposition was appropriate.

## III

As a threshold matter, we note that the Supreme Court has lately clarified the

2. Guardian has consistently disputed the factual accuracy of the full workload hypothesis, asserting that decedent's terminal illness permitted him to do little productive work during the last six weeks of his life. For the sake of argument, we assume that Burnham, despite the ravages of disease, conducted company business while bedridden.

standard for judicial review of ERISA fiduciaries' decisions which, like this one, are challenged pursuant to 29 U.S.C. § 1132(a)(1)(B).[3] At the time this case was decided below, most district courts—including those in this circuit—reviewed such determinations under an "arbitrary and capricious" test. *See, e.g., Palino v. Casey,* 664 F.2d 854, 858 (1st Cir.1981); *Bayles v. Central States, Southeast & Southwest Areas Pension Fund,* 602 F.2d 97, 99–100 & n. 3 (5th Cir.1979); *see generally* Comment, The Arbitrary and Capricious Standard Under ERISA: Its Origins and Applications, 23 Duquesne L.Rev. 1033 (1985). When squarely presented with the question, the Court swept aside a myriad of artificial distinctions and mapped a less deferential approach, holding that "for purposes of actions under § 1132(a)(1)(B), the *de novo* standard of review applies regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest." *Firestone Tire & Rubber Co. v. Bruch,* — U.S. ——, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989).

That the *Firestone* standard applies retrospectively to pending cases is too plain to warrant detailed analysis.[4] But despite the modified standard, a remand is not essential. Here, the veteran district judge—with foresight bordering on prescience—seemingly anticipated *Firestone* and made an alternative finding that "[r]egardless whether ERISA's deferential standard of review or a more stringent test is applied, Guardian reasonably refused the claim." D.Ct.Op. at 4. Moreover, this appeal in its present posture presents a "pure" question of law, *see supra* at 488–489; therefore, the required *de novo* review entails no factfinding or discretionary determinations such as would militate in favor of returning the case to the court below. *Cf., e.g., Camacho v. Autoridad de Telefonos de Puer-*

to Rico, 868 F.2d 482, 490 (1st Cir.1989) (where judge performed no factfinding and exercised no discretion, but merely determined question of law, judge's failure to disqualify himself, if error at all, was harmless; court of appeals could independently confirm resolution of legal question).

We proceed, then, to examine the district court's Rule 56 order in the afterglow of *Firestone.*

## IV

█ We start by restating the method of the statute: the benefit provisions of an ERISA-regulated group life insurance policy must be interpreted under principles of federal substantive law. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987); *Sampson v. Mutual Benefit Life Ins. Co.,* 863 F.2d 108, 110 (1st Cir.1988). We think it clear that the "federal common law of rights and obligations," *Pilot Life,* 107 S.Ct. at 1558, while still in formation, must embody common-sense canons of contract interpretation. Notwithstanding the ennobling purposes which prompted passage of ERISA, courts have no right to torture language in an attempt to force particular results or to convey delitescent nuances the contracting parties neither intended nor imagined. To the exact contrary, straightforward language in an ERISA-regulated insurance policy should be given its natural meaning. *See, e.g., Sampson,* 863 F.2d at 110–11.

█ In this case, the pertinent policy wording brooks no uncertainty. Assuming *arguendo* that Burnham was "work[ing]" at least 30 hours per week performing the duties of his occupation" from November 1 forward, *see supra* note 2, he was nevertheless not performing those duties "at [Caribou's] business establishment or other location to which [Caribou's] business require[d] him to travel." The words are

---

3. The statute provides in material part that "a civil action may be brought ... by a participant or beneficiary [of an ERISA-regulated plan] ... (B) to recover benefits due ... under the terms of [the] plan." 29 U.S.C. § 1132(a)(1)(B).

4. To its credit, Guardian concedes both that *Firestone* "clearly alter[ed] the controlling standard of review" and that the *Firestone* rule governs this appeal. Appellee's Brief at 17. *See also id.* at 19–20.

clear, precise, and definite. Plaintiff has suggested no way of interpreting them which would not have the effect of reading the last-quoted phrase out of the Policy. There is no principled way we may rewrite the clause. "So long as contract language is plain and free from ambiguity, it must be construed in its 'ordinary and usual sense.' " *Equitable Life Assurance Soc'y v. Porter–Englehart,* 867 F.2d 79, 87–88 (1st Cir.1989) (quoting *Boston Edison Co. v. FERC,* 856 F.2d 361, 365 (1st Cir.1988)); *see also Taylor v. Aetna Casualty & Surety Co.,* 867 F.2d 705, 706 (1st Cir.1989) (per curiam) ("Language used in an insurance contract must be given its plain, ordinary, and usual meaning."); *U.S. Fire Ins. Co.,* 835 F.2d at 956–57 (similar); *Liberty Mut. Ins. Co. v. Gibbs,* 773 F.2d 15, 17 (1st Cir.1985) (similar).

Plaintiff protests that a literal construction of the Policy is fundamentally inconsistent with the intent of ERISA. But that is not so. Safeguarding the interests of employees as a whole is a multifaceted endeavor. Any time coverage is less than universal, line-drawing becomes a necessary evil. Here, the line was drawn at a plausible point: the requirement that work be performed in visible, easily-monitored locations for a certain number of hours per week seems calculated to ensure that only full-time employees will enjoy the plan's benefits. That is not to suggest that the line could not have been drawn elsewhere; it is merely to restate the obvious—that the contracting parties (employer and insurer) had the right to plot the line as they saw fit, so long as the coordinates were rationally related to meet a lawful objective of the plan.

The Policy language is also flawed, plaintiff tells us, because the clause is arbitrary and capricious as applied to Burnham. Whether or not that is so, it is beside the point. It cannot validly be argued that all ERISA plans must pass an "as applied" test. Almost by definition, group plans require generalization. They focus on veri-fiable benchmarks, sparing the need for in-depth investigation of the circumstances of each and every claim. That a seeming inequity may result on occasion is not fatal to the plan's legitimacy: after all, as we said in an earlier ERISA case, "the necessity to draw hard boundary lines, inevitably adversely affects some individuals who find themselves on the wrong side of a line." *Rueda v. Seafarers Int'l Union of North America,* 576 F.2d 939, 942 (1st Cir.1978).

The situation, we think, is analogous to that confronting us in *Sprandel v. Sec'y of HHS,* 838 F.2d 23, 27 (1st Cir.1988) (per curiam). There, a beneficiary called into question the application of a social security regulation. We upheld the validity of the rule, observing:

> The long and the short of it is that Ms. Sprandel has not shown that the "line" drawn by the agency is an irrational one, or that it was plotted capriciously.... We acknowledge that the effect of the regulation seems unfair in the peculiar circumstances of this case. But that is endemic to lines—wherever they may be drawn, some people fall on the "other" side. If the ... "line" were to be re-drafted to account for the vagaries of Ms. Sprandel's lot, we do not doubt that it would then chafe other, equally deserving recipients. Short of individualized consideration of the equities of each and every case—a course which would likely paralyze the system—there are no perfect solutions.

*Sprandel,* 838 F.2d at 27.

Because Burnham performed no work during the currency of the Policy "at [Caribou's] business establishment or other location to which [Caribou's] business require[d] him to travel," no coverage inhered.

## V

We need go no further.[5] Where, as here, the words of an insurance policy are plain,

---

**5.** We summarily reject appellant's contention that Guardian, *qua* plan administrator, failed to fulfill various duties. The plan did not specifically designate an administrator. Accordingly, Caribou (the "plan sponsor," 29 U.S.C. § 1002(16)(B)), not Guardian, became the plan administrator. *See* 29 U.S.C. § 1002(16)(A)(ii). Plaintiff has not sued Caribou, and has not

we will "refrain from conjuring up ambiguities" and likewise "abjure unnecessary mental gymnastics which give the terms of the policy a forced or distorted construction." *Taylor*, 867 F.2d at 706 (quoting *Gleason v. Merchants Mut. Ins. Co.*, 589 F.Supp. 1474, 1480–81 (D.R.I.1984)). That the policy is part of an ERISA-regulated plan does not diminish the vitality of this rule. Courts have no warrant to redraft insurance contracts to palliate the effects of considered language on the occasional hard case.

*Affirmed.*

pointed out how Guardian violated its admitted (but considerably less comprehensive) duty, as a fiduciary, of providing a full and fair review of the claim. *See* 29 U.S.C. § 1133(2).