James BELLINO, Paul Hebert, Gerald Howard, Dana Jensen, Beryl Levesque, Robert Marthia, William Miraglia, Norman Welch, Mark Pelletier, Richard McLaughlin and David Scott Willey, Plaintiffs,

v.

SCHLUMBERGER TECHNOLOGIES, INC., Defendant.

Civ. No. 90–0012–P.

United States District Court, D. Maine.

Dec. 4, 1990.

Francis M. Jackson, Portland, Me., Herbert J. Ludwig, Nisbet & Ludwig, South Portland, Me., for plaintiffs.

Joseph J. Hahn, Bernstein, Shur, Sawyer & Nelson, Portland, Me., W. Irl Reasoner III, Jean M. Frazier, Baker & Hostetler, Columbus, Ohio, for defendant.

## MEMORANDUM OF DECISION AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

GENE CARTER, Chief Judge.

Plaintiffs, former employees of Defendant, bring this action pursuant to the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, to recover severance pay benefits allegedly owed them by Defendant. Plaintiffs allege that Defendant terminated them in August 1989, and they claim that they are entitled to severance pay based on a severance pay plan described in Defendant's employee handbook and personnel manual. That plan is an employee welfare benefits plan governed by the provisions of ERISA.

█ The Court now has before it the parties' cross-motions for summary judgment.[1] Defendant contends that it effected

---

1. Plaintiffs filed a motion for partial summary judgment (on liability only) which failed to comply with this Court's Local Rules in a number of respects. Most notably, Plaintiffs neglected to file a "separate, short and concise statement of the material facts, *supported by appropriate record citations,* as to which the moving party contends there is no genuine issue to be tried." Local Rule 19(b)(1) (emphasis added). Plaintiffs filed a separate statement labeled "Plaintiffs' Statement of Undisputed Facts with Regard to Motion for Summary Judgment"; however, that statement, for the most part, is not supported by appropriate record citations. This requirement is particularly important in a case such as this one, where numerous affidavits have been filed, as well as numerous and lengthy deposition transcripts.

Ordinarily, these deficiencies would warrant a dismissal of Plaintiffs' Motion for Partial Summary Judgment. In the exceptional circumstances of this case, however, the Court finds

a unilateral and permissible amendment to the plan which renders Plaintiffs ineligible for severance pay benefits. Alternatively, Defendant argues that Plaintiffs are not entitled to severance pay pursuant to the proper interpretation of the plan. Plaintiffs respond by arguing that the unambiguous language of the plan entitles them to severance pay.

In the Court's view, resolution of this case turns on whether an unwritten exclusion to the ERISA-regulated severance pay plan is enforceable against Plaintiffs. For the reasons that follow, the Court concludes that the exclusion upon which Defendant relies is ineffective and that Plaintiffs are entitled to severance pay.

### Discussion

A motion for summary judgment must be granted if:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

The facts for the purposes of this motion are as follows.[2] Plaintiffs are former employees of Defendant.[3] In January 1988, Defendant distributed an employee handbook to its employees, including Plaintiffs. The handbook contains the following provision:

#### Layoff

From time to time, Schlumberger may need to terminate an employee for lack of work, poor business conditions, or change in business focus. Should such terminations become necessary, Schlumberger will provide all affected employees with salary and benefits continuation for a specified period of time.

In May 1989, Defendant issued a Personnel Administration Procedures manual to all supervisory employees. This manual was not distributed to Plaintiffs. The manual elaborates upon the severance pay policy, providing:

When it becomes necessary, due to business conditions, to have a reduction in the workforce (layoff), the affected employees will be eligible for severance pay according to the schedule that appears below.

The severance pay schedule links the amount of severance pay to length of service with the company.

The manual specifies two types of involuntary termination: reduction in force and firing. A "reduction in force" is described in the following terms:

From time to time, Schlumberger may need to terminate an employee for lack of work, poor business conditions, or change in business focus. Should such

---

that justice requires relaxation of the requirements of the Local Rules. *See* Local Rule 1(c). First, the parties have determined that this action is appropriately resolved on cross-motions for summary judgment. *See* Agreed Joint Motion for Extension of Time to File Motions for Summary Judgment (September 13, 1990). Moreover, the Court finds that Defendant also failed to comply with the Local Rules because it did not file a timely objection to Plaintiff's motion for partial summary judgment. Most important, however, the Court concludes that, even after accepting Defendant's statement of material facts, Plaintiffs are entitled to summary judgment as a matter of law.

The Court notes that in relaxing the requirements in this exceptional case, it does not in any way condone the serious and time-consuming lapses by Plaintiffs' counsel.

2. Plaintiffs filed a timely objection to Defendant's cross-motion for summary judgment.

Plaintiffs' objection, however, failed to comply with Local Rule 19(b)(2) because it did not include a separate statement of disputed material facts supported by appropriate record citations. Local Rule 19(b)(2) provides that "[a]ll material facts set forth in the statement required to be filed by the moving party, if supported by appropriate record citations, will be deemed to be admitted unless properly controverted by the statement required to be served by the opposing party." Thus, the material facts set forth by Defendant are deemed to be admitted *to the extent that they are supported by appropriate record citations.*

3. Plaintiffs Bellino, Willey, Howard, Jensen, Levesque, Marthia, Miraglia, Welch and Pelletier were employed by Defendant or its predecessor at least since 1983. Plaintiffs McLaughlin and Hebert were hired by Defendant in 1988.

terminations become necessary, Schlumberger will provide employees with salary and benefits continuation for a specified period of time.

Employees who are laid-off are eligible for severance pay according to the enclosed schedule. The amount of severance pay is determined by the number of years of service with Schlumberger.

Defendant's policy is to deny severance pay to any laid-off employee who receives a job offer to perform a comparable job at the same or higher pay. This policy is consistent with Defendant's view of the purpose of its severance pay program as providing assistance to laid-off employees who become unemployed, and not as rewarding past services. This policy and these purposes are not set forth in Defendant's employee handbook, personnel manual, or in any other writing.

Prior to September 1989, Defendant was party to a series of contracts with National Semiconductor Corporation (NSC) to provide maintenance support on certain test equipment at NSC's South Portland facility.[4] Plaintiffs were employed to perform maintenance work pursuant to those contracts.

In late 1988 or early 1989, NSC decided that it would be economically advantageous to cancel the maintenance contracts with Defendant and perform the work itself. NSC concluded that its own personnel would require substantial training to perform the work, and thus it sought to fill at least 60% of the new positions with employees of Defendant.

On May 31, 1989, NSC verbally notified Defendant of its intention to discontinue the maintenance contracts and perform the work internally with Defendant's employees, who would become NSC employees. Defendant tried to persuade NSC to retain the contract; Defendant's efforts were to no avail, however, and on June 5, 1989, NSC sent Defendant written notice of cancellation of the contract.

Defendant and NSC then began extensive negotiations with respect to the assumption by NSC of the responsibilities associated with the maintenance contracts. Those negotiations concluded in late July 1989 and culminated in an agreement to transfer the major portion of the maintenance responsibility to NSC on September 5, 1989. Defendant and NSC identified nine employees[5] who would be terminated from Defendant's employ on September 4, 1989 and who would begin with NSC on September 5, 1989 to perform the required maintenance services. The agreement also called for NSC to assume a smaller portion of the maintenance responsibility on January 1, 1990. According to the agreement, Plaintiffs McLaughlin and Willey were to be terminated by Defendant effective December 31, 1989 and were to be hired by NSC effective January 1, 1990 to perform those services. NSC agreed to pay Defendant $5,000 for each employee who accepted and commenced employment with NSC.

On July 31, 1989, Defendant's personnel manager, Gerard Yanoshak, notified Plaintiffs that they were to be terminated. On the same date he informed them that they would receive offers of employment from

**4.** Prior to 1987, the South Portland facility was owned by Fairchild Camera and Instrument Corporation (Fairchild). A Schlumberger entity, separate and distinct from Defendant Schlumberger Technologies, owned Fairchild. Nine of the Plaintiffs (Miraglia, Howard, Pelletier, Welch, Levesque, Bellino, Marthia, Jensen and Willey) were employed by Fairchild to provide maintenance services at the South Portland facility.

In 1983, the nine Plaintiffs named above were transferred from the Schlumberger-owned Fairchild to another Schlumberger entity, Defendant Schlumberger Technologies. They did not receive severance pay as a result of that transition. As employees of Defendant, the individuals in the group continued to perform substantially the same services at the South Portland facility, pursuant to a series of maintenance contracts between Defendant and Fairchild.

In 1987, the Schlumberger entity sold Fairchild to NSC. Defendant continued to provide maintenance services at the South Portland facility pursuant to a series of contracts between it and NSC. The nine Plaintiffs named above continued to provide those services. In 1988, Defendant hired Plaintiffs McLaughlin and Hebert to perform maintenance services required by the maintenance agreements.

**5.** Plaintiffs Marthia, Welch, Howard, Pelletier, Bellino, Jensen, Levesque, Miraglia and Hebert.

NSC to perform the same or substantially the same jobs as they then possessed. Yanoshak informed Plaintiffs that they would not be eligible for severance pay because NSC had offered them comparable work at comparable wages.

On August 11, 1989 Plaintiffs received offers of employment from NSC. Those offers included a 5.5% wage increase. Each Plaintiff accepted his offer of employment with NSC on August 18, 1989. Defendant terminated Plaintiffs Bellino, Hebert, Howard, Jensen, Levesque, Marthia, Miraglia, Welch, and Pelletier effective September 4, 1989.[6] Those Plaintiffs became NSC employees on September 5, 1989. Willey's and McLaughlin's terminations were effective December 31, 1989. Willey commenced employment with NSC effective January 1, 1990. McLaughlin's employment with NSC began on January 8, 1990, after he had taken a scheduled vacation. No Plaintiff suffered a period of unemployment due to his transition to NSC.

## I.

■ Defendant's severance pay policy is an "employee welfare benefits plan" within the meaning of ERISA. *See Bellino v. Schlumberger,* 753 F.Supp. 391 (D.Me. 1990). By operation of law, Defendant itself is the administrator, 29 U.S.C. § 1002(16)(A)(ii), and fiduciary, 29 U.S.C. § 1002(21)(A), of the plan.

ERISA contains a number of reporting and disclosure requirements for employee benefit plans. It requires, *inter alia,* that every employee benefit plan "be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), and that every plan "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." 29 U.S.C. § 1102(b)(3). Congress designed these requirements to ensure "that every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan." H.R.Rep. No. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 5038, 5077–78.

■ Plaintiffs' challenge to the denial of benefits under the plan is authorized by 29 U.S.C. § 1132(a)(1)(B).[7] A denial of benefits based on an interpretation of an ERISA benefit plan is subject to *de novo* judicial review, unless the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.[8] *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989). Defendant's plan does not confer the type of discretionary authority which would prevent *de novo* judicial review.

6. The Court is careful to note that it is not making a finding of fact that Plaintiffs were terminated. Rather, the Court concludes that the record made on this motion presents no genuine issue as to whether they were terminated. Each employee received a letter confirming his "termination." Moreover, Defendant's own records of Plaintiffs' exit interviews state that "[d]ue to the transfer of business to National Semiconductor you are leaving Schlumberger Technologies to accept employment with National Semi located at South Portland, ME." No suggestion is made that Plaintiffs could have remained in Defendant's employ; in fact, Defendant informed Plaintiffs that if they refused offers of employment with NSC they would be treated as having resigned. *See* Affidavit of Gerard H. Yanoshak, ¶ 11.

Defendant concedes that "there is no question that Plaintiffs' employment with Defendant terminated in the sense that it ended, [but] the reason that Plaintiffs' employment ended is that Plaintiffs were transferred to employment with National Semiconductor Corporation." *See* Defendant's Statement of Disputed Facts in Response to Plaintiffs' Motion for Partial Summary Judgment on Liability at 3. This assertion does not create a genuine issue of fact concerning Plaintiffs' termination. The record facts leave no room for doubt that Defendant terminated Plaintiffs because NSC decided to sever its contractual relationship with Defendant.

7. That section provides in pertinent part that "a civil action may be brought ... by a participant or beneficiary [of an ERISA-regulated] plan ... (B) to recover benefits due to him under the terms of his plan."

8. Prior to *Bruch,* most federal district courts reviewed such determinations employing an "arbitrary and capricious" standard. *See Burnham v. Guardian Life Insurance Co. of America,* 873 F.2d 486 (1st Cir.1989).

In examining issues involving rights and obligations under an ERISA-regulated welfare plan, federal courts must be guided by federal substantive law. *Bruch,* 489 U.S. at 110, 109 S.Ct. at 954 (citing *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557–58, 95 L.Ed.2d 39 (1987); *Franchise Tax Board v. Construction Laborers Construction Trust,* 463 U.S. 1, 24, n. 26, 103 S.Ct. 2841, 2854, n. 26, 77 L.Ed.2d 420 (1983)); *see also Burnham v. Guardian Life Insurance Company of America,* 873 F.2d 486, 489 (1st Cir.1989). Development of this federal common law under ERISA must be guided by principles of trust law. *Bruch,* 489 U.S. at 110–111, 109 S.Ct. at 954. Courts must construe employee benefit plans "without deferring to either party's interpretation.... The terms of trusts created by written instruments are 'determined by the provisions of the instrument as interpreted in light of all the circumstances and such other evidence of the intention of the settlor with respect to the trust as is not inadmissible.'" *Bruch,* 489 U.S. at 112, 109 S.Ct. at 955 (citing Restatement (Second) of Trusts § 4, Comment d).[9] As these principles illustrate, "the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue." *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956.

## II.

The terms of the employee benefits plan at issue here are found in Defendant's employee handbook and personnel manual. According to the unambiguous language of that plan, severance pay benefits are available when Defendant "need[s] to terminate an employee for *lack of work, poor business conditions, or change in business focus.*"[10] It is uncontradicted that Plaintiffs were hired to perform the maintenance functions under Defendant's contracts with NSC; it is also uncontradicted that NSC, for economic reasons, decided to cancel those maintenance contracts. The contract cancellation eliminated Defendant's need for Plaintiffs' positions, and thus Defendant's employment of Plaintiffs was terminated. The Court concludes, after accepting those material facts set forth by Defendant which are supported by appropriate record citations, that Defendant terminated Plaintiffs due to the "lack of work" caused by the NSC contract cancellation.[11] Under the unambiguous language of the severance pay plan, those terminations rendered Plaintiffs eligible for severance pay.

Defendant contends that an exclusion to the severance pay policy exists where a laid-off employee immediately obtains comparable employment. However, this additional proviso does not appear in the writings evidencing the severance pay plan. The Court holds that Defendant may not rely upon this unwritten provision to alter the unambiguous language of the plan. *See Frank v. Colt Industries, Inc.,* 910 F.2d 90, 99 (3d Cir.1990) ("It is true

**9.** *See also Burnham,* 873 F.2d at 489: "[T]he 'federal common law of rights and obligations' [under ERISA], while still in formation, must embody *common-sense canons of contract interpretation.*" (citations omitted) (emphasis added). The Court must not "torture language" to force particular results or to convey nuances the parties never intended or imagined. *Id.* "So long as contract language is plain and free from ambiguity, it must be construed in its 'ordinary and usual sense.'" *Id.* at 490 (citations omitted).

**10.** The Court finds no ambiguity in these terms, nor is the meaning of the term "terminate" seriously capable of differing interpretations. The employee handbook describes "termination" in expansive terms: "Termination: Employment may be terminated for any number of reasons at any time, including retirement, resignation, discharge, or layoff." However, only specified types of termination trigger severance pay, *i.e.,* terminations that result when Defendant "needs to terminate an employee due to lack of work, poor business conditions, or change in business focus."

**11.** It is true that Plaintiffs' performance of the maintenance services at the South Portland facility was not "terminated"; Plaintiffs continued to perform those services for NSC. However, the proper question is whether Plaintiffs' *employment relationships* with Defendant were terminated due to Defendant's lack of work. The uncontroverted facts demonstrate, and indeed Defendant concedes, that Plaintiffs' employment with Defendant was terminated because NSC cancelled the maintenance contract.

that trust law looks to the settlor's intent, but only the settlor's intent *as manifested in the trust instrument* is relevant, unless there is an ambiguity in the instrument"); *see also Burnham v. Guardian Life Insurance Co. of America*, 873 F.2d 486, 489–90 (1st Cir.1989). The terms of the severance pay plan at issue here are complete and unambiguous, and thus parol evidence is not admissible to contradict them.

■ Defendant's contention that it unilaterally amended its severance pay policy in July, 1989 merits little discussion. Defendant argues in its memorandum in support of its motion for summary judgment that oral statements made by Defendant's personnel administrator, Gerard Yanoshak, constitute an amendment to the employee welfare plan that excludes benefits in these circumstances. Significantly, that assertion does not appear in Defendant's statement of material facts or in Mr. Yanoshak's affidavit. The Court concludes that Yanoshak's statements were not intended to constitute an oral amendment to the plan but, rather, that they were his interpretation of the plan. In any event, his oral statements could not, as a matter of law, constitute an amendment to the plan. *See Frank v. Colt Industries, Inc.*, 910 F.2d at 98 ("[I]n light of ERISA's requirement that a plan be maintained in a written document, a written plan, no matter how informal, can never be modified orally.")

Accordingly, it is ORDERED that Plaintiffs' Motion for Partial Summary Judgment be, and it is hereby, GRANTED; it is also ORDERED that Defendant's Motion for Summary Judgment be, and it is hereby, DENIED.