Gagnon v. Blue Cross                     CV-93-602-M     03/31/95

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Lynn S. Gagnon,
       Plaintiff,

       v.                                        Civil No. 93-602-M

Blue Cross and Blue Shield
       of New Hampshire,
       Defendant.


O R D E R


       Plaintiff Lynn S. Gagnon brings this claim for severance pay

benefits under the Employee Retirement Income and Security Act of

1974 ("ERISA"), 29 U.S.C. § 1001 et seq.  She claims that

Defendant Blue Cross and Blue Shield of New Hampshire ("Blue

Cross"), owes her $13,650.00 in severance pay.  Blue Cross has

moved for summary judgment, and, as explained below, its motion

is denied.


I.    BACKGROUND

       The facts, stated favorably to plaintiff, the party opposing

summary judgment, are fairly summarized as follows.  Blue Cross

employed plaintiff for over twenty years, until approximately May

12, 1993.  From January 1, 1990 until March 28, 1993, she was

employed as the administrative assistant to Executive Vice

President Frank Greaney. On March 28, 1993, Blue Cross abolished Mr. Greaney's position and terminated his employment. As a result, plaintiff's position as Greaney's administrative assistant was also eliminated.

Plaintiff nevertheless remained in Blue Cross's employ for six additional weeks, during which she continued to receive full salary at "Pay Grade 39," the level applicable to her job as Greaney's assistant. Plaintiff intended to find another position within Blue Cross comparable in compensation, responsibility, and prestige to her eliminated position. Plaintiff sought two positions in particular: administrative assistant to the remaining Executive Vice President or executive secretary to Blue Cross's President. Each position carried a pay grade level of 39 or higher. Blue Cross offered her neither position, although both were available. Instead Blue Cross made three different positions available to her, each of lesser compensation and responsibility than her eliminated position.

What follows is the chronology of events leading up to plaintiff's departure on Friday, May 14, 1993. On Friday, May, 7, 1993, one of the two positions that plaintiff had actively

2

sought, that of secretary to a remaining executive vice president (pay grade level 39), was filled by someone else. On Saturday, May 8, 1993, plaintiff met with Blue Cross's Director of Personnel Administration, Ron Lanseigne ("Lanseigne"), and voiced her frustration with being denied the level 39 executive secretary position. Plaintiff also expressed disappointment over the fact that her only apparent transfer option seemed to be a position in the document processing department at an annual salary $10,000.00 less than her grade 39 salary. Lanseigne was sympathetic and told her that she was probably entitled to severance pay, as her job had been abolished, but that "he would have to check it out." Plaintiff's Deposition at p. 48.

On Sunday, May 9, 1993, plaintiff, now confident that she would be entitled to severance pay if she left Blue Cross rather than accept a lesser position, removed her personal belongings from her office. Id. at p. 55. Lanseigne called later that evening, but seemed less enthusiastic about plaintiff's entitlement to severance pay. Id. at p. 56. Plaintiff asserts that Lanseigne said "he could not answer for this organization" as it related to severance pay issues, but that he would still check on whether she was so entitled. Id. Plaintiff informed

3

Lanseigne that she was not going to report to a lesser job in document processing, as she had planned to do, on Monday, May 10, 1993. Instead, she said that she would report to document processing on the following day, Tuesday, May 11, 1993, but only if she was denied severance pay. Plaintiff's Objection to Defendant's Motion for Summary Judgment, p. 4; Plaintiff's Deposition at p. 58.

On Monday, May 10, 1993, plaintiff had three separate conversations with Blue Cross's Vice President for Human Resources, Carol Corcoran ("Corcoran"). Plaintiff's Objection to Defendant's Motion for Summary Judgment at p. 5. In their first conversation, Corcoran, believing that plaintiff had quit over the weekend, wanted to know if plaintiff had changed her mind. Plaintiff's Deposition at p. 60. Plaintiff told Corcoran that she would not leave Blue Cross without severance pay. Id. Corcoran responded by saying, "[w]ell, then I expect you to report to work at 8:00 a.m. [Tuesday] with a positive working attitude in document processing," to which plaintiff agreed. Id.

Later that day, plaintiff called Corcoran with further inquiries regarding her entitlement to severance pay. Corcoran

4

allegedly responded angrily, asking plaintiff, "[w]hat is it with you and the severance? You are not entitled to anything." Id. at 62. Corcoran ended the conversation by telling plaintiff to cool down and consult her husband. Id. Soon thereafter plaintiff called Corcoran for the third time informing Corcoran that she indeed "quit." Id.

On the morning of Tuesday, May 11, 1993, plaintiff did not report to work at Blue Cross, but did have lunch with defendant's Executive Vice President, Martin Mitchell ("Mitchell"). At that meeting Mitchell told plaintiff that the position of legal secretary to Lisa Olcott ("Olcott"), defendant's Vice President and Legal Counsel, was open. Plaintiff's Objection to Defendant's Motion for Summary Judgment at p. 5. Plaintiff responded positively, contacted Olcott, and accepted that job, to begin the following day. Plaintiff's Deposition at p. 65. On Wednesday, May 12, 1993, however, plaintiff had a change of heart and decided that she did not want to return to defendant corporation. She telephoned Lanseigne and asked that Olcott be told that she was very "sorry . . . but that no, [she] did not want to return to Blue Cross and Blue Shield." Id. Two days later, on Friday, May 14, 1993, plaintiff signed defendant's

5

termination form stating that she was "unhappy with changes - time to move on."  Id.

Blue Cross moves for summary judgment, arguing that its severance pay policy does not apply to the plaintiff as she was not terminated due to job elimination, but rather, she voluntarily quit.  Plaintiff counters that summary judgment is inappropriate, asserting that Blue Cross's severance policy is applicable and genuine issues of material fact exist.

## II.   STANDARD OF REVIEW

Summary judgment is proper "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact "is one `that might affect the outcome of the suit under the governing law.'" United States v. One Parcel of Real Property with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial.  Anderson, 477 U.S. at 256.

The party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, demonstrating "some factual disagreement sufficient to deflect brevis disposition."  Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 112 S.Ct. 2965 (1992). This burden is discharged only if the cited disagreement relates to a genuine issue of material fact.  Wynne v. Tufts University School of Medicine, 976 F.2d 791, 794 (1st Cir. 1992).

The terms of a severance pay plan are "to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[1] Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 103 L.Ed.2d. 80, 109 S.Ct. 948 (1989).  If the plan does reserve discretion to an administrator or fiduciary to determine benefit eligibility, a more deferential, "abuse of discretion," standard applies to judicial review of a denial of benefits.  Firestone, 489 U.S. at 111.  The mere authority to interpret the terms of an

_____

[1] The court assumes that ERISA regulates the severance pay policy under which plaintiff seeks benefits as defendant raises no objection, and the policy appears to facially qualify as a "Welfare Benefit Plan" within the meaning of ERISA.

7

ERISA plan does not, without more, constitute delegation of discretionary authority to determine benefit eligibility. <u>Id.</u> at 112. Rather, a benefit plan must clearly grant discretionary authority to the administrator before decisions will be accorded the deferential, arbitrary and capricious, standard of review. <u>Rodriguez-Abreu v. Chase Manhattan Bank, N.A.</u>, 986 F.2d 580, 583 (1st Cir. 1993).

Here, Blue Cross's "Policies and Procedure Manual for Management Personnel" provides as follows:

> The intent of these policies is to increase understanding and to help in assuring <u>consistency and fairness of policy application throughout the organization</u>. Every member of the management team is responsible for the administration of these policies in a <u>consistent</u> and <u>impartial</u> manner.

Blue Cross and Blue Shield of New Hampshire, Policies and Procedure Manual for Management Personnel, executed January 1, 1992, at p. i. (emphasis added). There is no evidence that Blue Cross's severance pay policy grants any discretion to administrators to interpret plan terms or eligibility criteria in determining eligibility for severance pay benefits. The policy affirmatively states that:

8

> Upon termination, <u>all employees are entitled</u> to receive termination pay, which includes a sum equivalent to the total days of accumulated annual leave, the floating holiday balance at the regular rate of earnings, plus all salary accrued since the last pay day.

<u>Id.</u> at p. 61 (emphasis added).

Accordingly, the court will employ the de novo standard of review in evaluating defendant's denial of severance benefits. Under the de novo standard, the court must look "to the terms of the plan and other manifestations of the parties intent, in determining plaintiff's eligibility." <u>Firestone</u>, 489 U.S. at 113; <u>see also</u> <u>Burnham v. Guardian Life Ins. Co.</u>, 873 F.2d 486, 489 (1st Cir. 1989) citing <u>Sampson v. Mutual Ben. Life Ins. Co.</u>, 863 F.2d 108, 110 (1st Cir. 1988) ("[the] straightforward language in an ERISA-regulated [ ] policy should be given its natural meaning."). "In short, de novo review looks to the language of the plan (supplemented in appropriate cases by evidence essential to resolving a relevant ambiguity), not to any one party's interpretation of that language." <u>Allen v. Adage, Inc.</u>, 967 F.2d 695, 701 (1st Cir.1992).

9

## III. DISCUSSION

Blue Cross argues that employee's are eligible for severance benefits only where defendant corporation has: 1) eliminated the employee's position; and 2) terminated the employee's employment. Defendant's Motion for Summary Judgment, at p. 1. Defendant asserts that plaintiff's position was not eliminated and that she was not terminated, but quit.

Plaintiff counters that her "position" for purposes of the severance policy was secretary to Mr. Greaney, and as result of that position being eliminated she was terminated, entitling her to severance benefits. Plaintiff's Memorandum Objecting to Defendant's Motion for Summary Judgment at p. 3, 4. The pertinent policy provisions are as follows:

> Blue Cross and Blue Shield of New Hampshire provides a sixty day notice to employees whose position is being abolished, during which time the employee may consider an in-house transfer to any existing vacancies.
>
> If a transfer is not appropriate or possible, outplacement services are provided at the request of the employee.
>
> Upon termination due to elimination of positions, employees are entitled to all accumulated vacation pay and the balance of their floating holidays plus all salary accrued since the last pay day.

10

> Employees who work to the agreed upon
> termination date are granted Severance Pay
> which is paid the week after termination and
> includes one week of pay for every year of
> service . . .

Blue Cross and Blue Shield's Policies and Procedures Manual for
Management Personnel at p. 61 (emphasis added).

## A. ELIMINATION OF PLAINTIFF'S POSITION

It appears to be undisputed that plaintiff's secretarial
position was eliminated when Blue Cross eliminated her superior's
Executive Vice President's position. At the same time, there is
no doubt that the position of secretary to Blue Cross's Legal
Counsel still exists, and so was not eliminated. Plaintiff's
Exhibit 2, at 91. Hence, an important initial question is,
"Which position did plaintiff hold when she left Blue Cross on
Friday, May 14, 1993?"

Blue Cross maintains that plaintiff's last position, for
purposes of the severance policy, was that of legal secretary.
Memorandum of Law in Support of Defendant's Motion for Summary
Judgment at p. 3. In support of its argument Blue Cross points
to plaintiff's deposition, in which she stated "I think I did
tell her [Lisa Olcott, Blue Cross's Legal Counsel] that I would

work for her.  I'm sure I did."  Plaintiff's Deposition at 65.
Defendant asserts that plaintiff's "acceptance" extinguished any
right she might have had to severance pay benefits.

Plaintiff asserts that her alleged "acceptance" did not
extinguish her rights, arguing that for severance pay purposes
her last position was the one she actually held, that of
secretary to Mr. Greaney.  She argues that by remaining at Blue
Cross for six weeks after her position with Mr. Greaney was
eliminated, she took advantage of Blue Cross's clear severance
policy.  The pertinent policy language supporting her argument is
as follows:

> "Blue Cross provides a sixty day notice to
> employees whose position is being abolished,
> during which time the employee may consider
> an in-house transfer to any existing
> vacancies . . . [i]f a transfer is not
> appropriate or possible, outplacement
> services are provided . . . "

Manual at p. 61 (emphasis added).

With an eye toward the "natural meaning" and
"straightforward language" of the policy, plaintiff could have
legitimately interpreted Blue Cross's policy as affording two
months within which to find acceptable, comparable opportunities

12

at Blue Cross, failing which severance pay benefits, as defined, could be obtained. Firestone, 489 U.S. at 113; Burnham, 873 F.2d at 489. Blue Cross concedes that notwithstanding the fact that plaintiff's secretarial position had been eliminated, she was still paid at her previous grade 39 salary during this entire period. She was never paid at the reduced salary associated with the legal counsel secretarial position. Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 1. Secondly, plaintiff points to Blue Cross's response to an interrogatory asking it to "list the supervisors [plaintiff] had from January 1, 1990 through the time her employment ceased." Blue Cross answered that plaintiff had been supervised by Mr. Greaney. That Blue Cross concedes that Greaney and not Ms. Olcott (Legal Counsel) was plaintiff's supervisor, would seem to raise an issue of material fact relevant to whether a "transfer" ever took place within the meaning of the severance pay policy.

Plaintiff has at least raised issues of material fact as to which position she actually held at the time she terminated, whether any "transfer" occurred, and whether the transfer was "appropriate," within the meaning of those terms as used in the policy [plan].

13

## B.    TERMINATION OF POSITION

Blue Cross argues that even if plaintiff's position was in
fact eliminated, plaintiff would still not be entitled to
severance pay benefits, because she "voluntarily quit" her newly
accepted job as secretary to the legal counsel.  Memorandum of
Law in Support of Defendant's Motion for Summary Judgment at 1.
In support of its argument, Blue Cross cites plaintiff's
statement that she "quit" the legal secretary's job.  Id.  Blue
Cross contends that employees who voluntarily quit become
ineligible for severance pay.  The policy language does not
appear to specifically address that point.  However, a reasonable
reading of the language used might be that an employee whose job
has been eliminated may indeed "quit" rather than accept an
"inappropriate" transfer and still receive severance benefits,
while one who obtains an "appropriate" transfer and then
voluntarily quits would not be eligible.

Plaintiff concedes using the word "quit" in describing her
departure from Blue Cross but says that her departure was based
solely on her inability to secure an appropriate position within
Blue Cross and, implicitly, that the "quit" was from the
eliminated position, the only one she ever performed at Blue

14

Cross. Plaintiff's Memorandum Objecting to Defendant's Motion for Summary Judgment at 7. She says that upon finally realizing she was not going to be transferred to a comparable position in terms of compensation, responsibilities, and prestige, she simply chose, after some false starts, to end her association with Blue Cross. Id. at 7. Plaintiff may well have considered the legal secretary's position as a viable option at one point, and may have changed her mind and decided instead to leave Blue Cross rather than accept a position paying substantially less than her previous salary. See e.g., Plaintiff's Deposition at 19. Whether those circumstances, if indeed that is what occurred, constitute a separate and distinct voluntary "quit" or merely represent a continuing decisional process ultimately resulting in a refusal to accept an inappropriate internal job transfer, are not issues resolvable on these pleadings.

In addition, the record currently before the court is unclear as to whether plaintiff was accurately informed as to her option to receive severance pay under the policy. It appears to be at least arguable that she was led to believe that she was not entitled to severance pay by Blue Cross and that her options were limited to accepting the lesser secretarial position or leaving

15

Blue Cross's employ without severance.  These are fact related, if not fact driven, issues and their resolution might well prove significant in resolving this matter.

## IV.    CONCLUSION

The court finds that genuine issues of material fact exist for trial precluding summary judgment at this stage of the proceedings.  Accordingly, Blue Cross's Motion for Summary Judgment is denied.


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

March 31, 1995

cc:  Michael J. Sheehan, Esq.
     Edward M. Kaplan, Esq.

16