Francis J. SAMPSON, Jr.,
Plaintiff, Appellant,

v.

The MUTUAL BENEFIT LIFE
INSURANCE COMPANY,
Defendant, Appellee.

No. 88–1296.

United States Court of Appeals,
First Circuit.

Heard Sept. 16, 1988.

Decided Nov. 30, 1988.

As Amended on Denial of Rehearing and
Rehearing En Banc Dec. 28, 1988.

Roger S. Davis with whom Davis & Rubin, Boston, Mass., was, on brief, for plaintiff, appellant.

Edward S. Rooney, Jr., with whom Lyne, Woodworth & Evarts, Boston, Mass., was, on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, BOWNES and SELYA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

In June 1981 plaintiff Francis Sampson's right hand was severely injured in a workplace accident, and he was disabled for approximately three years. Sampson was insured under a group disability insurance policy issued by defendant Mutual Benefit Life Insurance Company ("Mutual"). During the period of his disability, Sampson was paid both disability benefits by Mutual and workers' compensation benefits by his employer's workers' compensation insurance carrier, Peerless Insurance Company ("Peerless"). In accord with the express provisions of the disability policy, Mutual withheld $19,147.50 from its disability payments to Sampson, to offset the workers' compensation benefits that he had received for his loss of time.

Sampson, together with his wife and three children, subsequently brought a third-party action against the Van Dorn Company ("Van Dorn"), the manufacturer of the plastic injection molding machine that allegedly had caused Sampson's injury. In 1984, the Sampsons entered into a settlement agreement with Van Dorn. Un-

der Mass.Gen.Laws ch. 152, § 15 (1986), Peerless, the workers' compensation insurer, had a lien upon the proceeds of the Sampsons' settlement with Van Dorn. Of the total settlement of $300,000, Peerless received $65,050. An additional $100,000 of the settlement went for attorneys' fees, charged to the Sampsons and to Peerless in proportion to their recoveries. The net recovery was $156,595 to the Sampsons and $43,367 to Peerless.

■ None of the above facts are in dispute. The only dispute before us involves the parties' differing interpretations of the legal consequences of these facts. After Peerless, the workers' compensation insurer, had been reimbursed from the proceeds of the third-party recovery, Sampson demanded that Mutual, the disability insurance carrier, refund the $19,147.50 that it had withheld from the disability payments to offset the workers' compensation loss-of-time payments to Sampson. When Mutual rejected this demand, Sampson brought this action. Sampson's rationale for his demand is the following. The disability policy issued by Mutual concededly provides for an offset against workers' compensation payments for loss of time. But the Mutual policy does not mention any offset for recoveries obtained in third-party actions. Because Peerless, the workers' compensation insurer, recouped its payments from the third-party recovery, Sampson should no longer be deemed to have received any workers' compensation payments at all. And so, Sampson argues, Mutual's offset against the workers' compensation loss-of-time payments should now be returned to Sampson.

Defendant Mutual rejects this argument. Mutual points to the undisputed facts that 1) workers' compensation payments for loss of time had been made to Sampson; and 2) under the terms of its policy, Mutual properly withheld funds from the disability payments it made to Sampson to offset the workers' compensation payments that he had received. The Mutual disability policy contained no provision dealing with the situation in which a workers' compensation insurer is later reimbursed from a third-party recovery. In the absence of any such provision, Mutual argues, a reasonable interpretation of the policy is that there should be no refund. If there were to be such a refund, Mutual continues, it would amount to a double recovery to Sampson for his lost time—once from Peerless (an amount which Peerless later recouped from the third party) and once from Mutual. And this double recovery would come at the expense of the other beneficiaries of the group disability policy—who, as a result of such disbursements, might have to pay higher premiums.

On cross-motions for summary judgment, the district court awarded summary judgment to Mutual and denied it to Sampson. Sampson now appeals from these decisions. The parties agree that this case arises exclusively under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* (1982). The generally accepted rule in ERISA cases is that courts should defer to actions taken by the trustees of employment benefit plans—in this case, Mutual—unless their action is "arbitrary and capricious." *Palino v. Casey*, 664 F.2d 854, 858 (1st Cir.1981). In this case, the district court held that Mutual's interpretation of its policy was not "arbitrary and capricious." To the contrary, it was reasonable and fair:

> [T]he third party tortfeasor [and not Sampson] compensated Peerless. There is nothing out of Sampson's pocket. He would be getting a windfall if he were to receive the $19,000 withheld....

> [T]he defendant's decision ... to withhold was clear and proper under the policy. It's not contrary to any public policy, and as a matter of fact, I rule that it is consistent with the Massachusetts policy as stated clearly in Section 15 of 152 [to avoid double recoveries].... It is a fair result and gives Mr. Sampson everything he should have had.

Because we agree with the district court's conclusion, we affirm. We add only a few observations, in response to arguments made by Sampson.

■ First, although Sampson acknowledges that his cause of action arises exclu-

sively under ERISA, he nevertheless maintains that the substantive law of Massachusetts—rather than the body of federal common law that has grown up around ERISA—should govern the interpretation of the Mutual policy. As support for this view, Sampson cites *Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), in which the Supreme Court held that ERISA did not preempt a Massachusetts statute concerning the scope of coverage that must be provided under a health insurance policy. We believe, however, that the present case—involving the interpretation of a disability policy's benefit provisions—is governed not by *Metropolitan Life* but by the Supreme Court's more recent decision in *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). In *Pilot Life,* the Court held that under ERISA—with narrow exceptions that are not relevant here—all state laws that may relate to employment benefit plans are expressly preempted. As the Court explained, Congress intended that ERISA's civil enforcement procedures, as set forth in 29 U.S.C. § 1132(a) (1982), be governed by a uniform body of federal law. "The expectations that a federal common law of rights and obligations under ERISA-regulated plans would develop ... would make little sense if the remedies available to ERISA participants and beneficiaries under [29 U.S.C. § 1132(a) ] could be supplemented or supplanted by varying state laws." *Pilot Life,* 107 S.Ct. at 1558.

Second, this circuit—like most others—has consistently held to the "arbitrary and capricious" standard for reviewing the decisions of ERISA plan trustees. *See, e.g., Bachelder v. Communications Satellite Corp.,* 837 F.2d 519, 521 (1st Cir.1988); *Jestings v. New England Telephone & Telegraph Co.,* 757 F.2d 8, 9 (1st Cir.1985); *Palino v. Casey,* 664 F.2d 854, 858 (1st Cir.1981). We are aware that the Third Circuit has ruled that the "arbitrary and capricious" standard should be modified under at least some circumstances. *Bruch v. Firestone Tire & Rubber Co.,* 828 F.2d 134, 137–45 (3d Cir.1987) (holding that in reviewing an employer's decision as trustee of an unfunded pension plan to deny severance benefits, the court should review the decision de novo, rather than defer to the trustee's interpretation of the contract), *cert. granted,* —— U.S. ——, 108 S.Ct. 1288, 99 L.Ed.2d 498 (1988). *See also Van Boxel v. Journal Company Employees' Pension Trust,* 836 F.2d 1048, 1051 (7th Cir.1987) (suggesting that the "arbitrary and capricious" standard is too lax in some pension cases and too stringent in others). But even if we were to believe that the "arbitrary and capricious" standard should be abandoned in some cases, we do not view the present case as an appropriate one for any such modification.[1]

Third, even if we were to interpret the Mutual policy de novo, rather than deferring to the interpretation of the trustees, we would still find Mutual's decision not to refund the disputed $19,147.50 to be eminently reasonable. Sampson argues that because of Mutual's withholding of these funds, he has in fact received *no* recovery for the loss of time caused by his injury. He reasons that the third-party award—from which Peerless, the workers' compensation insurer, was reimbursed—was made not only to him but to his wife and children as well, and that the settlement failed to designate any amount specifically for the loss of time. We find this argument to be utterly unpersuasive. As a result of the third-party settlement, Peerless was reimbursed for the benefits it had paid, and Sampson and his family retained the excess of more than $156,000. Sampson also kept the workers' compensation benefits for loss of time previously paid to him by Peerless. For Sampson now to claim that his loss of time remains uncompensated strikes us as verbal sleight of hand. In fact, to allow

---

1. We note that in a recent case the Third Circuit itself did not apply *Bruch* to a claim for benefits under ERISA. *Shiffler v. Equitable Life Assurance Society,* 838 F.2d 78 (3d Cir.1988). In *Shiffler,* the plaintiff-widow sought accidental death benefits under an employee benefit plan issued by Equitable. The court applied the "arbitrary and capricious" standard to the denial of the benefits, noting that "we do not understand [*Bruch* ] necessarily to apply in a situation ... involving 'personal claims for benefits,'...." 838 F.2d at 83 n. 7 (citation omitted).

 

Sampson to recover the loss-of-time offset from Mutual would violate the principle underlying both the Mutual policy's offset provision and the reimbursement provisions of the Massachusetts workers' compensation law, for it would allow Sampson to recover twice for the same loss.

AFFIRMED.