March 10, 1993 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1977

LUIS E. RODRIGUEZ-ABREU,

Plaintiff, Appellant,

v.

THE CHASE MANHATTAN BANK, N.A.,

Defendant, Appellee.

ERRATA SHEET

The opinion of this court issued on February 25, 1993, is

amended as follows:

Page 6, line 3: Replace "Fed. R. Civ. Pro." with "Fed. R.

Civ. P."

Page 11, line 3: In the citation to Northwestern Nat'l Ins.

Co., 908 F.2d 1077, 1984 (1st Cir. 1990), delete "1984" and

insert in its place "1084".

February 25, 1993 UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 92-1977

LUIS E. RODRIGUEZ-ABREU,

Plaintiff, Appellant,

v.

THE CHASE MANHATTAN BANK, N.A.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Hector M. Laffitte, U.S. District Judge]

Before

Selya, Circuit Judge,

Bownes, Senior Circuit Judge,

Stahl, Circuit Judge.

Jorge M. Silva-Cu tara, for appellant.

Jay A. Garc a-Gregory, with whom Arturo Bauermeister and

Fiddler, Gonzalez & Rodriguez, were on brief, for appellee.

February 25, 1993

BOWNES, Senior Circuit Judge. The plaintiff, Luis E.
BOWNES, Senior Circuit Judge.

Rodriguez-Abreu ("Rodriguez"), appeals summary judgment granted

in favor of the defendant, The Chase Manhattan Bank, N.A.

("Chase"), on cross motions for summary judgment in his suit

brought pursuant to the Employee Retirement Income Security Act

of 1974, as amended, 29 U.S.C. 1001 et seq., ("ERISA").

Finding that summary judgment was appropriate, we affirm.

I.

BACKGROUND

Rodriguez's claims involve two employee benefit

programs offered by Chase: (1) the Long-Term Disability Plan

("LTDP"), and (2) the Voluntary Separation Plan ("VSP"). The

LTDP provides a continuing source of income for eligible

employees who become disabled and unable to work for a continuous

period of six months or longer. The VSP was a new plan of

limited duration introduced by Chase in August of 1990 to reduce

its work force. The VSP offered employees who applied before

September 10, 1990, and who were accepted into the program a

package of benefits: severance pay; up to twelve months of

health care costs coverage; up to twelve months of coverage under

the Chase life insurance plan, and group counselling to

facilitate transition to another job with a different employer.

The VSP application contained waiver and release provisions.

Rodriguez was employed by Chase from 1957 until he

4

resigned effective September 21, 1990, as a participant in the

VSP. The parties stipulated that Rodriguez was absent from work

from March 19 until the effective date of his resignation due to

a heart ailment.1 While he was absent, Rodriguez was paid

first through his accumulated vacation and sick leave and then by

Chase through a special paid sick leave. Rodriguez did not apply

for or receive LTDP benefits before his resignation from Chase.2

Chase introduced the VSP on August 8, and Rodriguez

attended the orientation meeting on August 10. At the

orientation, Rodriguez inquired as to whether he could

participate in both the VSP and LTDP, and the Chase Compensation

Manager informed him that the Bank would investigate his

question. On August 17, Rodriguez met with Migdalia Lebron,

1 The district court stated in its Opinion and Order
granting summary judgment for Chase that Rodriguez was absent
from March 6 until he resigned effective September 21. On
appeal, Chase argues that Rodriguez was not continuously disabled
for the requisite six months prior to his resignation to qualify
him for LTDP benefits. Chase points to other dates used to
determine the date of disability: (1) Statement of Uncontested
Material Facts in the Pretrial Order that Rodriguez stated in his
Disability-Benefits Application Form signed on June 22, that he
had been unable to work since April 25, and (2) the parties'
stipulation that the disability period for Social Security
benefits began on April 26. Rodriguez replies that Chase
should be held to the stipulated date, March 19, for absence from
work.

2 Rodriguez stated in his letter to the Plan Administrator
of the LTDP, dated October 17, 1990, that he had been told that
he could not submit claims for LTDP benefits until his non-
occupational disability insurance benefits ended in September or
October of 1990. On appeal he explains that he did not apply for
LTDP benefits because the Chase representatives told him that he
would have to withdraw his application for the VSP before he
could apply for LTDP benefits.

5

Employee Benefits Officer of Chase, and asked about participation

in both the VSP and LTDP. She told him that she would ask the

Plan Administrator in New York. Also on August 17, Rodriguez

signed the Application and Release for the VSP which provided

that it could be withdrawn before September 10. During the week

of August 20, Mrs. Lebron informed Rodriguez that he could not

participate in both the LTDP and the VSP and that he would have

to withdraw his application for the VSP in order to apply for

LTDP benefits. Rodriguez did not withdraw his application for

the VSP. Rodriguez's application was accepted by Chase on

September 13, and his voluntary separation from Chase became

effective on September 21, 1990.

On October 17, Rodriguez wrote to the Plan

Administrator of the LTDP requesting a review of the decision

that he was not entitled to benefits from both programs, review

of the amount awarded for severance, and copies of the "Plan

Administration" books for the two plans. Chase responded by a

letter from Charles A. Smith, Executive Vice President of Chase,

dated December 28, that Rodriguez's eligibility for LTDP benefits

ended on September 21 with the termination of his employment,

that he had given up his rights to LTDP benefits when he chose to

participate in the VSP and denied his claim for increased

severance benefits. Chase provided summary plan descriptions for

the VSP and LTDP and provided a telephone number for further

questions. On January 30, 1991, Rodriguez, through a letter from

his attorney, requested review of the October determination as a

6

"final administrative appeal," and again requested copies of the

"Plan Administration" booklets. Chase affirmed denial of

Rodriguez's claims on March 12 and sent more copies of the plan

summaries for the VSP and LTDP. Chase sent the "Plan

Administration" booklets on May 2, 1991. In the meantime,

Rodriguez had begun the present action against Chase.3

Both Chase and Rodriguez filed motions for summary

judgment. The district court granted Chase's motion for summary

judgment, and also granted Rodriguez's claim that his severance

pay benefits should have been determined based upon his last

scheduled salary review, and awarded him the increased amount.

On appeal, Rodriguez contends that he was entitled to receive

long-term disability benefits which were denied by Chase, and

that the district court should have imposed sanctions against

Chase for its delay in providing Rodriguez with requested

information about Chase's long-term disability plan. Neither

party appeals the district court's award to Rodriguez of

increased severance benefits.

II.

3 The issue of exhaustion of administrative remedies has
not been raised in this case. Most courts, including this one,
generally require exhaustion of administrative remedies in ERISA
cases. Drinkwater v. Metropolitan Life Insurance Co., 846 F.2d

821, 826 (1st Cir.), cert. denied, 488 U.S. 909 (1988); United

Paperworkers v. International Paper Co., 777 F. Supp. 1010, 1014

(D. Me. 1991) (collecting cases). Under the circumstances in
this case, particularly in light of the fact that the plaintiff
did not receive the information which specified the final appeal
process to the Named Fiduciaries until after suit was begun, we
will not address the issue of exhaustion of administrative
remedies.

7

STANDARD OF REVIEW

We follow the familiar standard when reviewing summary

judgment in ERISA actions. Allen v. Adage, Inc., 967 F.2d 695,

699 (1st Cir. 1992); Manchester Knitted Fashions v. Amalgamated,

967 F.2d 688, 693 (1st Cir. 1992). Summary judgment is

appropriate if the factual materials submitted to the court

establish that there is no genuine dispute as to material facts,

and if the moving party is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(c); Burnham v. Guardian Life Ins. Co. of

Am., 873 F.2d 486, 488 (1st Cir. 1989). Our review of the

district court's grant of summary judgment is both de novo and

plenary: we review afresh the entire record in the light most

favorable to Rodriguez, resolving all inferences in his favor.

August v. Offices Unlimited, Inc., No. 91-2329, slip op. at 7-8

(1st Cir. Dec. 11, 1992); Allen, 967 F.2d at 699; Williams v.

Caterpillar, Inc., 944 F.2d 658, 661 (9th Cir. 1991).

A district court reviews ERISA claims arising under 29

U.S.C. 1132(a)(1)(B)4 de novo unless the benefits plan in

question confers upon the administrator "discretionary authority

4 Although Rodriguez did not specify the statutory authority
in his complaint to the district court, his claims arise under 29
U.S.C. 1132(a)(1)(B) which specifies:
(a) Persons empowered to bring a civil
action
A civil action may be brought--
(1) by a participant or beneficiary--
. . .
(B) to recover benefits due to him
under the terms of his plan, to enforce
his rights under the terms of the plan,
or to clarify his rights to future
benefits under the terms of the plan[.]

8

to determine eligibility for benefits or to construe the terms of

the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101,

115 (1989). Interpretation of terms of a plan and determination

of the validity of claims are not, in themselves, discretionary

functions. Id. at 112, 115. The Firestone rule has been

interpreted to mean that a benefits plan must clearly grant

discretionary authority to the administrator before decisions

will be accorded the deferential, arbitrary and capricious,

standard of review. Brown v. Ampco-Pittsburgh Corp., 876 F.2d

546, 550 (6th Cir. 1989).

In this case, the district court employed the de novo

standard based upon its findings that Rodriguez's claim was

denied by the Plan Administrator5, and neither the LTDP nor the

Plan Administration Booklet granted discretionary authority to

the Plan Administrator necessary to invoke the arbitrary and

capricious standard. The Plan Administration Booklet contains

the only direct statements of authority for determining benefits

under Chase's benefit plans:

Named Fiduciaries
The Named Fiduciaries have general authority
over the administration and operation of the
Plans.
. . .

Plan Administrator
The Plan Administrator is primarily
responsible for the publication of

5 The Plan Administration Booklet identifies the plan
administrator for all of Chase's benefit programs as the
Corporate Human Resources Executive.

9

information to Plan participants and the
filing of reports regarding the Plans.
. . .

In making a final decision, the Named
Fiduciaries or their delegates have
discretion in interpreting the meaning of
Plan provisions and in determining questions
of fact.

Rodriguez did not make a written request of the Named Fiduciaries

as provided in the Plan Administration Booklet, but sent his

letter of October 17, requesting a review of the denial of his

LTDP benefits, to the Corporate Human Resources Executive of

Chase. His letter was answered by Charles A. Smith, Executive

Vice President of Chase, and further communication concerning

Rodriguez's claims for LTDP benefits and additional severance pay

was with Mr. Smith. Chase contends that the district

court should have used the deferential, arbitrary and capricious,

standard because the Plan Administrator (Smith) was acting as the

delegate of the Named Fiduciaries who are granted discretionary

authority. Chase points to the fact that Smith used "we" instead

of "I" in his response to Rodriguez's final request which Chase

suggests means that Smith was acting on behalf of the

Fiduciaries. Chase also argues that because Smith was answering

Rodriquez's final request for review, his response was the final

determination of Rodriguez's claim on behalf of the Fiduciaries.

As the district court found, neither the LTDP, the

VSP, nor the Plan Administration booklet granted the Plan

Administrator discretionary authority to review claims. The Plan

10

Administration booklet granted the Plan Fiduciaries, or their

delegates, discretionary authority. ERISA allows named

fiduciaries to delegate responsibilities (other than trustee

responsibilities) through express procedures provided in the

plan. 29 U.S.C. 1105(c)(1).6 To be an effective delegation

of discretionary authority so that the deferential standard of

review will apply, therefore, the fiduciary must properly

designate a delegate for the fiduciary's discretionary authority.

Madden v. ITT Long Term Disability Plan, 914 F.2d 1279, 1283-84

(9th Cir. 1990).

Chase's claim that Smith was acting as the delegate of

the Fiduciaries fails for lack of evidence. First, Chase fails

to point to any plan provisions which provide express procedures

for the delegation of the Fiduciary's discretionary authority to

a delegate, and we have found none. Second, there is no

expression of intent that Smith act as the delegate of the

Fiduciaries and Smith did not claim to be acting on behalf of or

as the delegate of the Fiduciaries. Instead, Chase relies on

inferences from the circumstances to establish that Smith was the

delegate of the Fiduciaries, which we find insufficient to prove

6 29 U.S.C. 1105(c)(1) provides:
The instrument under which a plan is
maintained may expressly provide for
procedures (A) for allocating fiduciary
responsibilities (other than trustee
responsibilities) among named fiduciaries,
and (B) for named fiduciaries to designate
persons other than named fiduciaries to carry
out fiduciary responsibilities (other than
trustee responsibilities) under the plan.

11

delegation of discretionary authority, particularly in the

context of Chase's motion for summary judgment. Because the

relevant plan documents did not grant discretionary authority to

the Plan Administrator and the Named Fiduciaries did not

expressly delegate their discretionary authority to the Plan

Administrator, we find that the district court correctly employed

the de novo standard of review.

III.

DISCUSSION

ERISA regulates employee benefit plans through

standards of conduct for fiduciaries, requirements of information

disclosure, schedules for accrual and vesting of pension funds,

and by providing remedies and access to the courts. 29 U.S.C.

1001(b); Massachusetts v. Morash, 490 U.S. 107, 112-13 (1989).

The plans in question, the VSP and the LTDP, are both "employee

welfare benefit plans" under ERISA and as such, are not subject

to the stringent vesting, participation and funding requirements

imposed by ERISA on "employee pension benefit plans." 29 U.S.C.

1002(1) & (2); Allen, 967 F.2d at 698; Bellino v. Schlumberger

Technologies, Inc., 944 F.2d 26, 29 (1st Cir. 1991); Wickman v.

Northwestern Nat'l Ins. Co., 908 F.2d 1077, 1082 (1st Cir.),

cert. denied, 111 S. Ct. 581 (1990). When interpreting the

12

provisions of an ERISA benefit plan, we use federal substantive

law including the "'common-sense canons of contract

interpretation.'" Bellino, 944 F.2d at 29 (quoting Burnham v.

Guardian Life Ins. Co. of Am., 873 F.2d 486, 489 (1st Cir.

1989)). Both trust and contract principles apply to interpreting

ERISA plans. Allen, 967 F.2d at 698. Because ERISA preempts

state law related to employee benefit plans for the purpose of

providing a uniform body of law, federal case law which has

developed in interpreting ERISA plans governs rather than

individual states' rules of contract interpretation. Sampson v.

Mutual Benefit Life Ins. Co., 863 F.2d 108, 110 (1st Cir. 1988).

Because state law provides the richest source of law of contract

interpretation, we have incorporated state law principles in the

process of developing a body of federal common law. Wickman v.

Northwestern Nat'l Ins. Co., 908 F.2d 1077, 1084 (1st Cir.

1990).7 A. Eligibility for LTDP Benefits
A. Eligibility for LTDP Benefits

The terms of the LTDP require that an employee be

continuously disabled for six consecutive months by a covered

disability before the employee will be eligible to receive

7 Puerto Rico, where the parties in this action reside and
where the contract was made, has codified its law of contract
interpretation as follows:
If the terms of a contract are clear and
leave no doubt as to the intentions of the
contracting parties, the literal sense of its
stipulations shall be observed.
If the words should appear contrary to the
evident intention of the contracting parties,
the intention shall prevail.
P.R. Laws Ann. tit. 31, 3471 (1990); see also Simcox v. San

Juan Shipyard, Inc., 754 F.2d 430, 445-46 (1st Cir. 1985).

13

benefits. Rodriguez claims that he was eligible to receive LTDP

benefits when his employment terminated pursuant to the VSP on

September 21 because the requisite six-month waiting period had

passed since the onset of his illness. He never received LTDP

benefits nor did he apply for them.8 On appeal, Chase has

raised an issue about the beginning date of Rodriguez's

disability for purposes of determining his eligibility for LTDP

benefits before his resignation from Chase. Chase argues that

the date of absence or onset of illness is not the same as the

beginning of disability for purposes of the LTDP, and asserts

that Rodriguez's disability did not begin until April.

Chase's argument raises issues of fact which, if

material, would require remanding the case to the district court.

The terms and conditions of the termination of Rodriguez's

employment contained in the VSP Application and Release control

the outcome of the case, however, and eliminate any need to

pursue the factual dispute about the inception of disability and

the date of Rodriguez's eligibility for LTDP benefits.

B. Release of Benefits and Claims in the Application for VSP

We assume for purposes of this decision only, without

resolving disputed facts and without reference to relevant LTDP

provisions or applicable law, that Rodriguez would have been

entitled to LTDP benefits on or before the date of termination of

his employment with Chase if he had not applied for and been

accepted for the VSP. Within that framework, we next examine the

8 See supra note 2.

14

effect of the release and waiver provisions in the Application

and Release for the Chase Manhattan Bank, N.A. Voluntary

Separation Program (VSP Application and Release).

The VSP Application and Release is a contract between

Rodriguez and Chase establishing the mutual rights, benefits,

obligations and waivers involved in the VSP. Interpretation of a

contract presents a question of law for this court to determine.

Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1083 (1st

Cir. 1989). "[A] contract is to be interpreted in a manner which

gives reasonable effect to its terms and conditions." Manchester

Knitted Fashions, 967 F.2d at 694. Contract language in an ERISA

action is to be given its plain meaning. Burnham, 873 F.2d at

489. Determining whether contract language is ambiguous is also

a question of law, and contract language is ambiguous if the

terms are inconsistent on their face, or if the terms allow

reasonable but differing interpretations of their meaning.

Federal Deposit Ins. Corp. v. Singh, 977 F.2d 18, 22 (1st Cir.

1992); Fashion House, Inc., 892 F.2d at 1083. If the language

of the contract is ambiguous, we turn to surrounding

circumstances, undisputed extrinsic evidence, to divine the

parties' intent. Lumpkin v. Envirodyne Industries, Inc., 933

F.2d 449, 456 (7th Cir.), cert. denied, 112 S. Ct. 373 (1991)

(interpreting a release in an ERISA action); Restatement (Second)

of Trusts 24 cmt. b, and 164 cmt. e (1959). Unlike the

interpretation of ambiguous terms in insurance policies which

uses the doctrine of contra proferentem, when interpreting

15

severance pay plans in the ERISA context, we generally do not

construe ambiguous terms against the drafter. Allen, 967 F.2d at

701. Summary judgment based upon the construction of contract

language is appropriate only if the meaning of the language is

clear, considering all the surrounding circumstances and

undisputed evidence of intent, and there is no genuine issue as

to the inferences which might reasonably be drawn from the

language. Healy v. Rich Products Corp., No. 92-7398, 1992 WL

358117 at *4 (2d Cir. Dec. 7, 1992) (quoting Science Corp. v.

Rochdale Village, Inc., 920 F.2d 147, 151 (2d Cir. 1990)); see

also Singh, 977 F.2d 18, 21 (1st Cir. 1992); Allen, 967 at 699,

701-02.

The VSP Release and Application consists of two parts,

(1) Application and (2) Full and Final Waiver and Release of

Claims. The second section, entitled "Full and Final Waiver and

Release of Claims," states in pertinent part:

In return for the benefits available to me
under the VSP, the sufficiency of which is
hereby acknowledged, I fully and finally
waive, discharge and release any and all
claims of whatsoever nature, known and
unknown, other than my right to the

enforcement of the terms of the VSP and my

rights to vested benefits which have been

accrued, funded and vested to date, against

The Chase Manhattan Bank, N.A., . . .
including but not limited to, claims under
. . . the Employee Retirement Income Security
Act of 1974, . . . .

(Emphasis added.) Both parties contend that the language is

plain and unambiguous, but they disagree about the

interpretation. Rodriguez contends that the emphasized language

16

excepts his right to LTDP benefits from the waiver because his

right to those benefits had "vested": his rights were

established and fixed because he had fulfilled the eligibility

requirements and, therefore, he was entitled to the benefits.

Chase counters that "vested", as used in the release, means

pension benefits which are the benefits that ERISA requires to

vest. Because the parties attribute reasonable but differing

meanings to the term "vested", we find that the term is ambiguous

as used in the emphasized language of the VSP Application and

Release.

The Second Circuit has recently addressed the meaning

of "vested" in the context of an exception to a release clause in

a stock purchase agreement which involved release of benefits

from ERISA plans in Healy v. Rich Products Corp., No. 92-7398,

1992 WL 358117 (2d Cir. Dec 7, 1992). The plaintiff, in Healy,

had specifically requested that language be inserted in the

release to except particular plans from which he was already

receiving benefits. The defendant added language to the release

using the term "vested" apparently to effect the purpose

requested by the plaintiff, and then claimed on motion for

summary judgment that the term "vested" did not include the

plaintiff's benefits. The district court did not address the

intent of the parties, but instead used the definition of

"vested" from the ERISA statute as applied to pension plans and

found that the term did not include the plaintiff's benefits. On

appeal, the Second Circuit held that the term could not be

17

defined by the ERISA statute because the plans at issue were not

ERISA pension plans. Accord Bellino, 944 F.2d at 31 ("we give

preeminence to the natural meaning of ERISA plan terms, and we

may not supplant such meaning with rigid definitions or contrary

interpretations offered by the parties.") The Second Circuit, in

Healy, remanded the case to the district court to determine the

meaning of "vested" according to ordinary principles of contract

interpretation with reference to evidence of the parties' intent

from the surrounding circumstances including extrinsic evidence

of intent if necessary. In the case before us, the evidence of

intent is undisputed and does not require factual determination

by the district court.

To divine the parties' intent in this case, we examine

the VSP Application and Release as a whole and the undisputed

circumstances surrounding the formation of the contract. In the

Application section, the Separation Incentive sub-section

provides: "I understand that, if this application is accepted, I

will receive the following benefits in lieu of any benefits I

might otherwise receive under Chase's salary continuance policy:

[benefits are listed]." The LTDP is part of Chase's salary

continuance policy because the stated purpose of the LTDP is to

provide a disabled employee with a continuing source of income

during the disability, and LTDP benefits are determined based

upon the employee's monthly base salary. The parties do not

dispute the meaning of this provision and the meaning is plain:

Rodriguez agreed to waive his rights to LTDP benefits in exchange

18

for the benefits listed in the VSP.

The undisputed circumstances surrounding Chase's offer

of the VSP also demonstrate that Chase's intent was to require

waiver of other benefits, such as LTDP benefits, by VSP

participants. During the orientation and application process for

the VSP, Rodriguez asked the Chase representative whether he

could participate in the VSP and still receive LTDP benefits.

The representative consulted with the Plan Administrator and then

informed Rodriguez that the two plans were mutually exclusive and

that he would have to withdraw his application for the VSP if he

wanted to preserve his right to apply for LTDP benefits.

Rodriguez decided not to withdraw his VSP application and did not

pursue his LTDP benefits until after his employment was

terminated. Despite Rodriguez's arguments to the contrary, there

can be no genuine dispute that based upon the VSP Application and

Release, read as a whole, and Chase's declared intent that the

VSP and LTDP be mutually exclusive, the plain meaning of "vested"

does not include Rodriguez's LTDP benefits even if the benefits

had vested or accrued before the time of the release.

ERISA does not prohibit knowing and voluntary

relinquishment of employee benefits. Dist. 29, United Mine

Workers v. New River Co., 842 F.2d 734, 737 (4th Cir. 1988).

Further, the heightened scrutiny applied to waiver of rights

accrued in ERISA pension plans does not apply in this case where

the plans involved were both welfare benefit plans. See, e.g.,

Finz v. Schlesinger, 957 F.2d 78, 82 (2d Cir.), cert. denied, 113

19

S. Ct. 72 (1992). Issues of relinquishment of rights and waiver

are governed by federal common law developed in ERISA cases

rather than by particular state law although state law may inform

the development of the federal common law. Matter of Heci

Exploration Co., Inc., 862 F.2d 513, 523 (5th Cir. 1988). To be

valid, a waiver of ERISA benefits must be an intentional

relinquishment or abandonment of a known right or privilege. Id.

Rodriguez was aware of his potential eligibility for

LTDP benefits when he began the orientation for the VSP. He

asked about receiving both VSP and LTDP benefits, and Chase

personnel informed him that the plans were mutually exclusive,

that he would lose his right to LTDP benefits if he elected to

participate in the VSP, and that if he wished to continue as a

Chase employee and apply for LTDP benefits, he would have to

withdraw his VSP application. Rodriguez admits that he

understood that he was presented with a choice between

alternatives: (1) choose the VSP, terminate employment with

Chase, and receive the lump sum separation payment and other

benefits; or (2) continue employment with Chase and apply for

LTDP benefits. He was a management level employee at Chase. He

consulted an accountant about the plans. Armed with the

necessary information concerning his alternatives, Rodriguez made

a voluntary and informed choice to participate in the VSP and

waive his right to LTDP benefits. Under these circumstances, we

find that Rodriguez's waiver was valid and that he relinquished

20

his right, if any, to claim LTDP benefits after termination of

his employment with Chase pursuant to the terms of the VSP.

C. Denial of Request for Imposition of Penalties

A plan administrator is obligated by statute, 29 U.S.C.

1024(b)(4),9 to provide specified information about employee

benefit plans to participants or beneficiaries upon written

request. In this case, Rodriguez, and then his counsel,

requested, in writing, the Plan Administration booklets from

Chase's Plan Administrator who sent the plan summary for the VSP

and the plan booklet for the LTDP instead. After the last

request, the Plan Administrator sent the Plan Administration

booklet.

The district court denied Rodriguez's request for

penalties to be imposed on Chase's Plan Administrator pursuant to

29 U.S.C. 1132(c)(1)10 on the grounds that "Rodriguez has

9 29 U.S.C. 1024(b)(4) provides:
The administrator shall, upon written
request of any participant or beneficiary,
furnish a copy of the latest updated summary
plan description, plan description, and the
latest annual report, any terminal report,
the bargaining agreement, trust agreement,
contract, or other instruments under which
the plan is established or operated. The
administrator may make a reasonable charge to
cover the cost of furnishing such complete
copies. The Secretary may by regulation
prescribe the maximum amount which will
constitute a reasonable charge under the
preceding sentence.

10 29 U.S.C. 1132(c)(1) provides in pertinent part:

Any administrator. . .(B) who fails or
refuses to comply with a request for any
information which such administrator is

21

failed to show that his rights were harmed or otherwise

prejudiced by the delay in his receipt of the information and has

not demonstrated bad faith or intentional delay on the part of

the defendant." The imposition of penalties is committed, by

statute, to the discretion of the trial court, and we will not

overturn the court's determination absent an abuse of discretion.

Fisher v. Metropolitan Life Insurance Co., 895 F.2d 1073, 1077

(5th Cir. 1990).

Although prejudice and bad faith are not prerequisites

for imposition of penalties, these are factors which the district

court properly considered in exercising its discretion not to

impose penalties. Godwin v. Sun Life Assurance Company of

Canada, No. 91-1368, 1992 U.S. App. LEXIS 33897, at *9 (5th Cir.

Dec. 31, 1992); Harsch v. Eisenberg, 956 F.2d 651, 662 (7th

Cir.), cert. denied, Bihler v. Eisenberg, 113 S. Ct. 61 (1992).

Although we acknowledge that the Plan Administration booklet was

important and should have been sent, we agree with the district

court that there is no evidence that the Plan Administrator acted

required by this subchapter to furnish to a
participant or beneficiary (unless such
failure or refusal results from matters
reasonably beyond the control of the
administrator) by mailing the material
requested to the last known address of the
requesting participant or beneficiary within
30 days after such request may in the court's
discretion be personally liable to such
participant or beneficiary in the amount of
up to $100 a day from the date of such
failure or refusal, and the court may in its
discretion order such other relief as it
deems proper.

22

intentionally or in bad faith by sending the plan booklets after

the first two requests and then sending the Plan Administration

booklet only after the third request. We also agree with the

district court that Rodriguez failed to show that his rights were

prejudiced by the delay. Rodriguez asserts that he was not

informed of the proper appeal process until he received the Plan

Administration booklet in May, but he does not show how the delay

caused him harm.11 Therefore, we find that the district court

did not abuse its discretion by declining to impose penalties

against the Plan Administrator.

Affirmed. Costs to appellee.

11 Because exhaustion of administrative remedies is not an
issue in this case, Rodriguez's failure to file a final appeal
with the Named Fiduciaries, as provided in the Plan
Administration booklet, has not prejudiced his court action.

23