35 F.3d 556
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James G. SNEAD, Plaintiff-Appellant,
v.
UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant-Appellee.
JAMES G. SNEAD, Plaintiff-Appellee,
v.
UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant-Appellant.
 Nos. 93-1857, 93-1944.
 United States Court of Appeals, Fourth Circuit.
 Argued April 14, 1994.
Decided Sept. 12, 1994.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Chief District Judge. (CA-92-542-A)
 Walter Martin Schey, San Francisco, California, for appellant.
 James Lawry Nolan, Leboeuf, Lamb, Greene & MaCrae, Washington, D.C., for Appellee.
 On Brief: Andrew J. Bernstein, Unum Life Insurance Company of America, Portland, Me., for appellee.
 E.D.Va.
 AFFIRMED IN PART AND REMANDED IN PART.
 Before ERVIN, Chief Judge, SPROUSE, Senior Circuit Judge, and HARVEY, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This appeal involves the proper calculation of benefits under a group long term disability policy, which was part of an ERISA plan covering appellant James G. Snead ("Snead"). Monthly benefits are calculated on the basis of an employee's earnings prior to disability, with reductions for duplicative income replacement benefits from other sources such as workers' compensation, Social Security and retirement benefits. The issues tried below involved the calculation of Snead's benefits, the applicability of workers' compensation deductions in light of a related tort settlement, and whether Snead was required to submit medical proof of his continued disability at his cost.
 
 
 2
 The district court held that UNUM Life Insurance Company of America ("UNUM") is entitled to offset workers' compensation benefits paid to Snead by a third party against UNUM's disability payments to Snead, that Snead must periodically submit to a physical exam at his own expense, and that Snead is entitled to recover his attorneys' fees and costs. We affirm the district court's decision with respect to the amount of disability benefits payable to Snead and the award to Snead of attorneys' fees and costs. However, we remand on the issue of whether Snead must pay for future physical exams when these are required by UNUM.
 
 I.
 
 3
 Snead was employed by American Pecco Corporation ("American Pecco") as a serviceman on a construction hoist on June 27, 1987, when his right arm and hand were permanently injured as a result of a workplace accident. Snead was insured against long term disability under an employee welfare plan (the "Policy") purchased from UNUM by American Pecco. The Policy is governed by ERISA, 29 U.S.C. Secs. 1001 et seq. When injured, Snead was also entitled to receive workers' compensation benefits from Fireman's Fund Insurance Company ("Fireman's Fund"), American Pecco's workers' compensation carrier.
 
 
 4
 On June 28, 1987, Fireman's Fund began paying Snead workers' compensation benefits in the amount of $326 per week based on Snead's average pre-injury wage of $732 a week. On September 10, 1987, Snead applied to UNUM for disability benefits. Snead's application was approved, and he received benefits covering the period from September 26, 1987 through September 26, 1989. Pursuant to the terms of the Policy, UNUM was entitled to deduct Snead's workers' compensation payments from the long-term disability payments:
 
 
 5
 Monthly Benefit Reduction: If the Insured Employee is entitled to other income benefits, as defined below, for the same period of disability for which a Monthly Benefit is payable in accordance with the terms of this Policy, then the amount of such Monthly Benefit which is payable hereunder shall be reduced by the amount of these other benefits.
 
 
 6
 Other income benefits, referred to above, include:
 
 
 7
 (1) any amount payable under any Workmen's Compensation Law, Occupational Disease Law, or any other legislation of similar purpose....
 
 
 8
 Thus, UNUM deducted $326 from Snead's weekly long-term disability payments during this period. Under the Policy, these deductions were to continue for as long as Snead was entitled to receive workers' compensation benefits, which is a maximum of 500 weeks under Virginia law. Va.Code Ann. Sec. 65.2-500(D) (Michie 1991).
 
 
 9
 Snead subsequently brought a third-party action against HCB Contractors, Inc. for its role in the accident. Snead v. HCB Contractors, Inc. et al., No.K87-2022 (D. Md.1987). In August 1989, that suit was settled for $700,000. Snead received $410,000 in cash from the settlement after paying medical expenses, fees and costs. One of those costs was a $50,000 payment to Fireman's Fund to satisfy a workers' compensation lien. Due to Fireman Fund's statutory right of subrogation, Snead could not receive any workers' compensation payments so long as the tort settlement exceeded the amount due Snead under the workers' compensation rules.[1] Snead and Fireman's Fund reached an agreement under which Snead would pay Fireman's Fund $50,000 to satisfy the workers' compensation lien, and Fireman's Fund would pay for his medical benefits for five years. Fireman's Fund and Snead filed an agreed statement of facts with the Workmen's Compensation Industrial Commission of Virginia on September 25, 1989, stating that $39,236.85 of the $50,000 represented repayment to Fireman's Fund for workers' compensation benefits received by Snead between the date of the accident and the date of the settlement of the suit against HCB Contractors.
 
 
 10
 In September 1989, Snead returned to work at American Pecco in a different position at considerably lower pay. While Snead was no longer entitled to payment of full disability benefits, he did receive smaller benefit payments under the Policy's Rehabilitative Benefits provision. UNUM did not deduct $326 from Snead's weekly payments during this period. Snead was laid off from his new position on June 17, 1991. After he was laid off by American Pecco, Snead filed another claim for full disability benefits with UNUM. In November 1991, UNUM determined that he did not qualify as totally disabled from "any gainful occupation" and refused to provide further benefits after November 26, 1991.
 
 
 11
 On December 5, 1991, Snead's attorney wrote to UNUM requesting an ERISA review of its decision to deny benefits. UNUM claims that it asked Snead to provide information about his disability, rehabilitation prospects, and earning capacity, but that Snead failed to provide this information. In January 1992, UNUM again made a determination that Snead was able to work in another gainful occupation and that he was no longer totally disabled under the terms of the Policy.
 
 
 12
 On April 17, 1992, Snead brought this suit in federal district court under ERISA, 29 U.S.C. Secs. 1132(a)(1)(B) and 1451, to enforce his rights under the plan. UNUM filed a motion for summary judgment on July 29, 1992, which argued that Snead was not totally disabled. UNUM subsequently withdrew that argument; it states that this withdrawal was based on documents that it received under a federal magistrate judge's order compelling Snead to produce documents relating to his tort suit against HCB Contractors. UNUM asserts that these documents demonstrated that Snead was indeed totally disabled and that therefore UNUM reopened its administrative review. On August 28, 1992, the district court ordered a remand to the UNUM plan administrator. After review by the plan administrator, UNUM determined that Snead's disability payments should be reinstated, retroactive to November 27, 1991, the date on which UNUM initially rejected Snead's claim for long-term disability.
 
 
 13
 The parties returned to court, however, over the amount to which Snead was entitled. UNUM claimed that it was entitled to deduct from Snead's future disability payments the $326 weekly workers' compensation benefits to which he was entitled. UNUM further claimed that it had overpaid benefits to Snead because it had not reduced the disability benefits it paid during Snead's reemployment in 1989-91 and pending its determination of his 1991 total disability claim by the amount of workers' compensation benefits that Fireman's Fund paid to Snead during that same time period. Snead argued, in contrast, that as a result of his $700,000 settlement with HCB Contractors and Virginia's rule on subrogation, he was no longer entitled to workers' compensation benefits because, under its right of subrogation, Fireman's Fund would only have to resume payment to Snead if his settlement payment, divided into weekly amounts of $326, would run out before the 500-week Virginia statutory maximum period for workers' compensation. In Snead's case, however, his tort settlement will outlast the 500-week maximum, and Fireman's Fund will never have to pay him benefits. The parties also disputed whether Snead was required to submit and pay for medical proof of his continued total disability.
 
 
 14
 The district court ruled in UNUM's favor and found that UNUM could deduct $326 per week for workers' compensation benefits over the remainder of the 500 weeks. The court rejected Snead's claim that UNUM had been unjustly enriched by deducting $326 per week for payments made during the period prior to the tort settlement because Snead had repaid the amounts on which the deductions were premised to Fireman's Fund as part of the $50,000 workers' compensation lien. The district court also ruled that Snead was responsible for paying for future medical examinations to confirm his continuing disability status. Finally, the court awarded Snead attorneys' fees and costs, finding that he was a prevailing party based on the finding that he was totally disabled.
 
 
 15
 Snead timely appealed the court's determination as to the deductions for workers' compensation payments and his responsibility to pay for medical examinations. UNUM cross-appealed the district court's award of attorneys' fees to Snead.
 
 II.
 
 16
 In reviewing the issue of whether UNUM's Policy permits UNUM to offset the proceeds of the tort settlement against its payments to Snead, it is instructive to begin by examining the effect of the tort settlement. Snead views the settlement as having relieved Fireman's Fund of the obligation to pay any of the $163,000 (i.e. $326 X 500 weeks) in workers' compensation benefits to which Snead would have been entitled in the absence of the settlement agreement. Therefore, Snead claims that he is not, and will never be, entitled to payment from Fireman's Fund, and that UNUM thus has no right to reduce his disability payments. He further contends that he is now owed the amount of the reductions taken for workers' compensation during the period of September 26, 1987 through September 26, 1989, because Firemen's Fund recouped its payments from Snead following the settlement of Snead's third-party suit. UNUM, on the other hand, maintains that Snead has received the equivalent of his full workers' compensation recovery in a lump sum. Therefore, the workers' compensation reduction should continue for 500 weeks, the maximum allowable under Virginia law.
 
 
 17
 In addressing this issue, the district court was guided by the First Circuit's decision in Sampson v. Mutual Ben. Life Ins. Co., 863 F.2d 108 (1st Cir.1988), which is the only opinion that addresses this issue. Sampson holds that, in an ERISA case such as Snead's, an employee may not recover monies withheld by a disability insurance carrier to offset workers' compensation payments even after the workers' compensation insurer has recovered all of its payments from the settlement in the employee's action against a third-party tortfeasor. The First Circuit held that
 
 
 18
 to allow Sampson to recover the loss-of-time offset from Mutual would violate the principle underlying both the Mutual policy's offset provision and the reimbursement provisions of the Massachusetts workers' compensation law, for it would allow Sampson to recover twice for the same loss.
 
 
 19
 863 F.2d at 110-11. Even though Sampson did not involve deductions for future workers' compensation payments obviated by a settlement, the district court nonetheless followed the reasoning of Sampson and found that UNUM's Policy allowed it to offset all of Fireman's Fund's potential liability:
 
 
 20
 the plain language of the policy provision permits the insurance company to offset disability benefits against workmen's compensation benefits previously paid to the disabled employee. Thus, UNUM is entitled to offset workmen's compensation benefits paid to Snead by Fireman's Fund against disability payments UNUM must pay to Snead.
 
 
 21
 J.A. at 447. In the instant case, Fireman's Fund received reimbursement from Snead for workers' compensation disability payments it had already paid on account of his $700,000 third-party settlement. Fireman's Fund also received credit at the rate of $326 a week for the workers' compensation benefits it would have been required to pay in the future were it not for the settlement. Thus $163,000 of the $700,000 settlement should be treated as the equivalent of "one full recovery" of all the workers' compensation benefits to which Snead was entitled.[2] We believe that the district court was correct in its finding that
 
 
 22
 [h]ere, as a result of the third party settlement, Fireman's Fund was reimbursed for the benefits that it paid to Snead and was relieved from liability for any future benefit payments. Snead retained $410,000 from the third party settlement, and kept the workmen's compensation benefits previously paid to him by Fireman's Fund. Snead, therefore, received one full payment of workmen's compensation benefits, and he should not be allowed to recover twice for the same loss. Sampson, 863 F.2d at 110-111. To refuse UNUM the offset, and allow Snead to retain the workmen's compensation benefits would fly in the face of the policy American Pecco entered into with UNUM.
 
 
 23
 J.A. at 448. Furthermore, because UNUM did not take into account the workers' compensation benefits that Snead received during the period from September 26, 1989 through November 26, 1991 when UNUM paid the rehabilitation disability benefits, an overpayment of $37,799.42 resulted. UNUM is entitled to offset this sum against its monthly benefit liability until the overpayment is exhausted.
 
 
 24
 Accordingly, we affirm the judgment of the district court with respect to the amount of disability benefits to which Snead is entitled.
 
 III.
 
 25
 Prior to trial, UNUM required Snead to submit proof of disability on a form entitled the Insured's Supplemental Statement, which was to be completed by a physician. On the issue of whether UNUM or Snead should pay for Snead's medical examinations, the district court found that the following provision in the Policy unambiguously stated that Snead must pay for any medical exams necessary to prove his continuing disability:
 
 
 26
 When proof is received that an insured employee is totally disabled as the result of sickness or injury and requires the regular attendance of a legally qualified physician, the Insurance Company will pay a monthly benefit to the insured employee after completion of the elimination period. This monthly benefit will be paid as long as total disability continues provided that proof of continued total disability is submitted at the insured employee's expense, to the Insurance Company upon request....
 
 
 27
 (Emphasis added). The district court failed, however, to take note of a separate provision in the Policy, which provides:
 
 
 28
 PHYSICAL EXAMINATION: The Company at its own expense shall have the right and opportunity to examine the person of any individual whose injury or sickness is the basis of the claim when and as often as it may reasonably require during the pendency of the claim hereunder.
 
 
 29
 Snead argues that when the Physical Examination section is read together with the section relied on by the district court, there is some ambiguity as to who bears responsibility for payment of Snead's medical examinations. We agree. While written proof of disability is clearly a requirement of the Policy, it is not entirely clear that the nature of that proof requires a physician's report. Snead asserts that when UNUM specifically requires submission of a physician's report, which it does in the Insured's Supplemental Statement form given to Snead, that it must be operating under the PHYSICAL EXAMINATION portion of the contract, which requires UNUM to pay for the exam. Because it seems that the district court did not consider this section in interpreting the contract, we remand this issue to the district court for further consideration.
 
 IV.
 
 30
 The district court awarded attorneys' fees and costs to Snead under 29 U.S.C. Sec. 1451(e) and 29 U.S.C. Sec. 1132(g). UNUM correctly points out that Sec. 1451(e) is inapplicable to Snead's action because it relates to withdrawal liability. However, we affirm the district court's fee award under ERISA Sec. 502, 29 U.S.C. Sec. 1132(g), which provides that a "court in its discretion may allow a reasonable attorney's fee and costs of action to either party." The district court found that Snead had prevailed on his original claim that he was totally disabled, and applied this court's five-factor test first set forth in Reinking v. Philadelphia Am. Life Ins. Co., 910 F.2d 1210, 1217-18 (4th Cir.1990), and rearticulated in Quesinberry v. Life Ins. Co., 987 F.2d 1017, 1029 (4th Cir.1993).[3] After reviewing the record in this case, we are satisfied that the district court reached the correct result in its analysis of the Quesinberry factors, and we find no abuse of discretion in the court's award of attorneys' fees and costs to Snead. Accordingly, we adopt the reasoning of the district court on this point as articulated in its memorandum opinion. James G. Snead v. UNUM Life Ins. Co. of America, No.92-542-A (E.D. Va. June 22, 1993).
 
 V.
 
 31
 For the reasons set forth above, we affirm in part, but remand to the district court on the issue of responsibility for payment of medical examinations.
 
 AFFIRMED IN PART; REMANDED IN PART
 
 
 [1]
 Under Virginia law, a claim against an employer for injury or death benefits
 shall operate as an assignment to the employer of any right to recover damages which the insured employee ... may have against any other party for such injury or death, and such employer shall be subrogated to any such right and may enforce ... the legal liability of such other party.
 Va.Code Ann. Sec. 65.2-309 (Michie 1991). In discussing Virginia's subrogation provision, the Fourth Circuit has stated that
 [t]he express inclusion of the subrogation provision in Workmen's Compensation Acts prevents the employee from acquiring for a single injury two separate remedies--the one, in tort, against the third party tort-feasor, the other, in contract, under the Workmen's Compensation Act; for it is quite generally held that, in the absence of such an express statutory grant to the employer, the employee retains the right to collect full damages from the third party tort-feasor, in addition to his right to collect compensation under the Act.
 Crab Orchard Improvement Co. v. Chesapeake & Ohio Ry. Co., 115 F.2d 277, 279 (4th Cir.1940), cert. denied, 312 U.S. 702 (1941).
 
 
 [2]
 Snead argues that he did not receive "one full recovery" of workers' compensation benefits because the Industrial Commission of Virginia (the "Commission") did not issue a "one full recovery" order. Under Va.Code Ann. Sec. 65.2-701, an insurer and an employee may enter into a compromise of claim agreement, which is to be submitted to the Commission for its approval. "If approved, the agreement shall be binding...." Id. An award of the Commission that is not contested "shall be conclusive and binding as to all questions of fact." Id . at Sec. 65.2-706
 On August 28, 1989, the Commission entered an order ratifying the agreement between Fireman's Fund and Snead with respect to the tort settlement. That agreement stated:
 The outstanding award is terminated on the above date subject to approval by the Industrial Commission.
 * * *
 Mr. Snead received $410,000 from the third party carrier. No further compensation payments will be made until claimant has exhausted the net proceeds of the settlement at the rate of $326.00.
 Snead argues that the order was a termination of benefits because it does not expressly state that he has received "one full recovery." We find this argument to lack merit. The agreement filed with the Commission reflects that Snead was paid a lump sum amount in lieu of receiving checks from Fireman's Fund on a weekly basis, which Snead would have had to reimburse from the proceeds of the tort settlement.
 
 
 [3]
 The five factors are:
 (1) degree of opposing parties' culpability or bad faith;
 (2) ability of opposing parties to satisfy an award of attorneys' fees;
 (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
 (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
 (5) the relative merits of the parties' positions.
 Quesinberry, 987 F.2d at 1029 (quoting Reinking, 910 F.2d at 1217-18).
 It should be noted that while Quesinberry overruled Reinking on other grounds, Quesinberry carried forward the five factor test.